The last case on our docket today and for this term is Agenda No. 16-128-770, PML Development LLC v. Village of Hawthorn Woods. Counsel Fried-Pellant, are you prepared to proceed? Thank you, Your Honor. My name is Don Sampin. I'm with the Clausen Miller Firm. I represent PML Development. This is a contract case and it presents two important contract issues. One concerns application of the election of remedies doctrine to deny a party the benefit of the first to breach principle. And the other involves the application of a 1917 Illinois Supreme Court case which was used as the basis for denying both parties to the contract damages in connection with breaches that were found by the trial court with respect to both parties. I'm going to first address the election of remedies issue, then we'll get into the breach and partial breach issues. As to that first issue, the court found as I indicated that both parties breached the contract. This was a development contract for the development of a landfill site near the village. There's no question, though, that the village was the first to breach. And just very briefly with respect to the facts, this was a contract that was entered into between the village and PML back in 2012. The trial court found that by February of 2013, the PML Development Company had done what it needed to do for the issuance of grading permits. The village declined to issue the grading permits and began interfering with the means and methods for development of the property. The second district appellate court agreed that the village breached and that it did not do so in good faith. And all those things occurred prior or began occurring prior to the time that PML filed its lawsuit in early 2015. They continued thereafter, but the breaches found by the trial court with respect to PML did not occur until some later point in time. And as a result, the trial court applied the so-called first to breach principle, and it holds that one party's material breach will excuse performance of the contract by the second party, even if the second party subsequently is found to have breached the contract. And we cited case law in support of that proposition in the briefing here before your honors. The village does not disagree that that is the law of Illinois. The appellate court did not disagree. And I think it remains a valid, viable principle in the state. The appellate court, nonetheless, declined to apply the first to breach principle. And it did so because it said that PML had elected to continue the contract following the village's breach. Now, the village argues in this court that the appellate court's reference to an election did not invoke the election of remedies doctrine. But there's really no other name for it. The courts of Illinois have established certain standards for determining when one party's election of a remedy is to the exclusion of other remedies that might be available. And none of those standards, in our view, were present here. And one of the reasons, well, let me say this. One of the requirements for applying the election of remedies doctrine is the finding of an inconsistency between the remedies being pursued by the plaintiff. And this appears to have been the criterion relied upon by the appellate court, the lack of consistency when it referred to the mandamus orders that were pursued by PML early on in the litigation. Those mandamus orders, the mandamus motions, should not, however, be construed as an election that would foreclose the application of the first to breach principle for several reasons. And one reason is that PML's election, for purposes of the election of remedies doctrine, was not due until the end of the trial. We sought the mandamus relief in 2015 and 2016, but the litigation continued on for another three or four years. And once the trial ended, the remedy we elected was not to continue the contract. The remedy we elected at that point was damages and an order seeking that we were relieved from performance under the contract. The mandamus orders that were entered was consistent with the damages we sought at the end of the case. It was consistent because a party seeking relief, seeking damages for breach of contract, has a duty to mitigate its damages. And the mandamus orders did just that. They mitigated the damages to which PML would otherwise have been entitled. Now, there are other factors here as to why the election of remedies should not have foreclosed the application of the first to breach principle. The case law is pretty clear, and we've cited it in the briefing, that an inconsistency alone in remedies being sought is not sufficient. The courts generally require one of several other factors also to be present, and one of those factors is the risk of double compensation. Well, the village here has never argued that the trial court awarded PML double damages. It's made other arguments with respect to our damages, but it's never argued that we've received double compensation, so that simply is not a factor. Counsel, what are you asking for, an offset of damages, both parties? Is that what you're seeking? What we're asking for with respect to the application of the first to breach principle is damages and being relieved of our obligations under the contract. And that's basically what the first to breach principle applies, says. And does that involve an offset of damages? No. It allows PML to recover its damages, and it relieves us from further obligations under the contract. So, no, that would not involve an offset. Now, when we get to the second part of my argument here, talking about partial breach, if this court were to disagree with us, then we'll talk about a potential offset at that point. Does that respond to your query, Your Honor? All right. Thank you. One of the other factors that courts talk about that has to be present, in addition to an inconsistency, is something that misleads the defendant into a detrimental change of position. Well, by filing these orders for, filing these motions for mandamus, we did not mislead the village in any way. The village disagreed with the position we took, but we did not mislead it in any way. We did not force the village into a change of its position. The mandamus orders required it to partially conform to what it had agreed to back in 2012 when the parties entered into the contract. I would not regard that as a change of position, nor did the village incur any detriment by virtue of these orders, these mandamus orders. As I've indicated, the mandamus orders had the effect of mitigating some of the damages. So to that effect, they were to the benefit of the village, and the village has never claimed that it was harmed by these mandamus orders. It didn't make that claim at the end of the case in the trial court. It didn't make that claim in the appellate court. It doesn't make that claim here in this court. So the bottom line here is that for multiple reasons, the record does not reflect circumstances which would suggest that PML made an election of remedies that ought to foreclose the application of the first to breach doctrine. Now, I'll get to the second issue that Justice Overstreet referenced for these questions about an offset. And this has to do with the Chicago washed coal decision from 1917. And it gets us to the heart of the district court's decision and the reason for its reversal. That court spent about half of its analysis agreeing with us that the village had breached. It found that, as I mentioned before, that the breaches were not in good faith. But then it turned to PML, and it said, well, you, PML, you continued the contract after the village's breach. And, moreover, the trial court found you, PML, also to be in breach of the contract. As a result, it said, under Chicago washed coal, neither side is entitled to recover damages. End of analysis. Case closed. Now, what the court failed to consider was that if PML continued the contract after the village's breach, then both sides must be regarded as having continued the contract after the other's breach. In which case, each side would be entitled to recover damages from the other under the so-called partial breach doctrine. And that doctrine holds that one party breaching a contract may still recover damages from the second party for the second party's breach. If the second party continues the contract after the first party's breach, and the second party also breaches the contract itself. And that proposition is supported by numerous cases that we've cited before your honors. And the village does not disagree with us. In fact, the village advocates the same partial breach doctrine and cites some of the same cases that we do in support of that doctrine. So this may be a relatively rare case that you, your honors, have in front of you in that both sides are taking a position that the appellate court erred. And it erred in denying damages to both sides. Now, the village takes that a step further. If we decide that both sides are entitled to recover damages, is it appropriate that, are you asking that we remain it then to the appellate court for them to make that determination or to the trial court to make the determination? Well, if your honors decide that the partial breach doctrine applies, I think the appropriate thing to do would be to reverse the appellate court and reinstate the damages found by the trial court. But also allow the village to recover the damages that it proved up at trial. And then to remand it to the appellate court for the appellate court to evaluate additional arguments that PML made as to why it's entitled to additional damages and fees in connection with the evidence at trial. I don't think a remand to the trial court is in order. I think a remand back to the appellate court would be in order. While both parties agree on the legal principle here, the village takes it a step further. And it says that only the village ought to be entitled to recover damages because it says the village terminated or attempted to terminate the contract after PML's breach. And as it turns out, that's the village's only argument that it makes for the recovery of damages here before your honors. And it turns on whether the village actually attempted or did in fact terminate the contract following PML's breach. And the record demonstrates that that argument is totally inaccurate. It is the exact opposite of the position the village took in the appellate court where it stated in its opening appellate court brief that both sides elected to continue the contract after the other's breach. And it cited case law in support of that proposition as to why both sides were entitled to recover damages from the other. It's inconsistent with the post-trial briefing in the trial court where the village argued as part of its post-trial briefing that it was entitled to specific performance. And it makes that clear in its brief before your honors. It was seeking specific performance at the conclusion of the trial. Specific performance is the direct opposite of trying to terminate a contract. And we've cited some of the language in the village's post-trial briefing where it says that the village allowed the contract to continue even after PML's breach. Now as part of its argument here on appeal, the village argues that it filed a motion for a receiver. And it says the purpose of that motion was to end the contract. That's one of the points we addressed on the first page of our reply brief. The appointment of the receiver was not to terminate the contract but to continue the contract with the receiver performing some of the obligations of PML under the contract. And the receivership motion itself refers to specific performance of the contract. In addition, at the same time that the village filed this motion for a receiver, it filed a motion for summary judgment which it has characterized as seeking specific performance. So there was nothing about the filing of that motion. And it's hard to believe that the village was really serious about the appointment of a receiver because it did not take an interlocutory appeal of the denial of its motion as it could have under Rule 307. It did not argue at the end of the case that the denial of its motion was error. It did not argue that in the appellate court. It does not argue that in this court. So it's simply hard to take, hard to conclude that the village was actually serious that it would accomplish much of anything by filing a meritless motion which it quickly abandoned after the court denied the relief was being sought. The bottom line here is that there was no attempt by the village to terminate the contract. And as a result, if PML is found to have continued the contract after the village's breach, then both sides did so and each side is entitled to recover damages from the other. The only other argument I want to address here, and then I'll sit down, is the village's argument that this court should remand the case to the trial court so that it can prove up damages in connection with the failure to convey the property. It makes that argument because it says that it didn't have the opportunity to prove up damages in the trial court. Well, the fact of the matter is, between the time it says that the conveyance should have taken place and the beginning of the trial, there were about three and a half years during that period. The trial itself took another six months. Following the trial was the post-trial briefing, and the trial court took another 11 months to announce its decision. And during any of those periods of time, the village could have hired an expert, introduced testimony, and tried to prove up its damages. It simply failed to do so, and by failing to do so when it had the opportunity, it's waived its right to seek damages. So as I mentioned earlier, we're seeking an order reversing the appellate court, including reinstatement of the trial court judgment for both damages and fees that were awarded by the trial court. Alternatively, we ask this court to reverse the appellate court and find that each side is to recover its damages proved up at the trial of the case. The case should be remanded back to the appellate court to consider PML's additional arguments with respect to both damages and fees. Thank you. May it please the court, counsel, my name is Tim Elliott, and I'm proud to represent the village of Hawthorne Woods in this case. The issue before your honors is what happens when both parties breach a contract and each seeks relief from the other for those breaches. Counsel was correct in saying this arises out of a 2012 development agreement. When all was said and done under that agreement, PML received six years to deposit over a million cubic yards of fill onto the property, and the village was deprived of the principal consideration that it was to receive, the principal benefit, which was the property itself. The lower courts both found that the parties both materially breached this contract, but they reached very different conclusions. The trial court awarded full relief to PML and nothing to the village. That was a grossly inequitable ruling. Counsel, do you contest the allegation that the village breached first? We do not contest that. In fact, that's central to our argument that we breached first. We think it's actually highly significant that we were the first to breach and that they elected to continue after that breach. The appellate court also found that both parties materially breached, but declined to award relief to either party. I would submit to you there are three issues on this appeal. The first is the first-to-breach rule. We believe the appellate court properly applied and articulated that rule, and we would ask you to affirm. The second is PML's request to apply the partial breach doctrine as articulated in Dussman. And I emphasize as articulated in Dussman because that court went further than previous Illinois courts have done. We do not object to this court adopting that particular doctrine, but we do note, as counsel previewed, that favors the village in this case and allows the village to recover, but not PML. The third issue we would submit to you is the new business rule. That is only an issue if you reach a conclusion that PML is entitled to any relief. Counsel, did you just say that your position is that the appellate court correctly applied the first-to-breach rule? We think the appellate court correctly applied and articulated the first-to-breach rule. We ask you to affirm the appellate court on that. So is their decision based on an application of the first-to-breach rule or determination that it does not apply in this instance? Those are two sides I would submit, Your Honor. Those are two sides of the same coin. We think they applied it correctly by declining to apply it and recognizing that the exception to it was appropriate here. Does that answer your question? Yes. Okay. I'd like to turn, if I could, to the first-to-breach rule. The first-to-breach rule is well established in Illinois and it serves an important purpose. And that purpose is to protect a non-breaching party from the burden of continuing to perform under a contract that's been breached. But that rationale disappears when the non-breaching party wants to continue under the contract. For example, in a circumstance like this where the non-breaching party determines it's more profitable for them to continue under the contract. Thus, Illinois has long recognized an exception to the first-to-breach rule. It doesn't apply where the non-breaching party elects to proceed. The purpose for that exception is also simple to understand. It avoids an inequitable situation where one party has to continue performing under a contract while the other is excused. Didn't the GML have a duty to mitigate its damages? I mean, you talk about that they wanted to profit or that they would increase their profit, but weren't they just trying to stop their losses? No. I agree they have a duty to mitigate damages, but I disagree strenuously that what they did was mitigation. If you read what they actually filed in the trial court, I don't think the word mitigation is used even once. They weren't coming to the court saying, hey, wait a minute, we've incurred a bunch of expenses here, we bought the property, we've got 100 fill tickets out there, we need to fill those. They were coming to this trial court saying, we have a contract and we want four years to work on this contract. They weren't talking about eliminating or mitigating the amounts they had spent so far. They wanted the full four years, and they ultimately got nearly six. If you read what they actually wrote, it is not mitigation. They had over 100,000 trucks come to this property during that six-year period. Over 100,000 trucks. That's not mitigation. And I've noticed in their briefs and in argument before the court this morning, PML has said they were trying to mitigate damages, but they've never explained what they mean by that. Because they asked that the contract be performed absolutely in full. On the first-to-breach rule, though, the not applying it in a circumstance where the non-breaching party wants to proceed makes sense, and it's been the established law for over 100 years. Now, counsel has mentioned several times that the Chicago washed coal decision was the first case to really cite this proposition. But he doesn't mention that it has been applied and adopted time and time and time again since then. And we've cited those cases. Printback, South Beloit, Dustman, and the like. The leading commentators, Williston, Corbin, Farnsworth, all accept it. So this is not some 100-year-old decision that was suddenly resurrected out of nowhere. It's a 100-year-old rule that has been steadily applied. PML does not cite any contrary authority, and it doesn't really provide a principled reason why this court should deviate from that 100-year course of decisions. And so we would respectfully ask the court to apply that, the first-to-breach rule and its exception, as the appellate court did. We then turn to a fact question, which is the appellate court's finding that PML elected to proceed. And I think it's important to note here that the villages breaches that were found by the trial court came early in the party's relationship. The trial court found three material breaches. The first was the failure to issue a permit in 2013. That occurred in 2013. The second is interference with the means and methods. That all occurred before 2015. And I would cite you to the record C3649-51. That's their trial exhibit, where they outline all the different interfering mechanisms with the means and methods. And they conclude in late 2015. And finally, the third material breach that the trial court found was the issuance of stop work orders to compel concessions on the part of PML. They concede that ended by 2014. There's no evidence presented nor any findings of a material breach by the village after late 2015. That's significant because PML continued beginning in 2013 on the project. They filed a lawsuit in 2015. Their complaint, very different from what you heard today, but their complaint says the agreement is legal, binding, and enforceable. That they had a right to proceed to complete the project. A clear right to complete their work. They're not looking to mitigate. They want to complete their work. Because they've made a determination that's going to be way more profitable for them to deposit over a million cubic yards of fill on this site. They petitioned for mandamus on two occasions. That's not mitigation either. They got four years under a permit for further operations. If you look at their claims and evidence at trial, they were seeking to continue. So the appellate court, we would submit, correctly found that PML continued and elected to continue under the contract. Now, under the appellate court's ruling, both parties were found in material breach. Neither could enforce it. To avoid that result, PML is trying two arguments in this court. First, PML is trying to change the rule of decision from the first to breach rule to the election of remedies doctrine. Second, it asked the court to adopt the partial breach doctrine as articulated in Dustman. I'll turn quickly to the election of remedies doctrine. This case wasn't decided below under the election of remedies doctrine, and it shouldn't be decided under the election of remedies doctrine. This is a straw man argument we would submit by PML. The appellate court never mentioned election of remedies, never cited any election of remedies authorities, never looked to any election of remedies cases. It cited first to breach rule cases. Now, the appellate court found that PML made an election, but not every election is an election of remedies. These are two distinct legal theories. PML, in its brief, cited a comment in a Seventh Circuit decision, Emerald, that noted that the first to breach doctrine is a subspecies or a variety of the election of remedies. That's really the sole authority they've cited or the sole source for saying this is an election of remedies case. And I would submit to your honors that even if the election of remedies doctrine and the first to breach doctrine share some sort of common legal ancestor somewhere back in antiquity, the reality is they have been distinct in Illinois for over 100 years, and they should remain distinct. The court below correctly articulated and applied the first to breach rule and resort to election of remedies is neither necessary nor wise. I would note, however, that even if this were an election of remedies case, we would prevail. And the reason is this. The election of remedies authorities in Illinois essentially say you can plead alternative causes of action, but at some point, maybe even up to trial, at some point you have to decide which way to go. This is a little bit of an unusual case because the lawsuit was not filed after the party's transactions were concluded. It was filed in the middle of the party's six-year relationship. And the actions that PML took materially impacted the party's obligations. They forced the village to continue under the contract over the village's objection. They compelled future performance. And when they did that, they elected a remedy. I would cite to you on this the Kelkief decision, which is a first district decision. And it spells out that an election of remedies occurs when double compensation is threatened or where one party's pursuit of a remedy causes the other party to materially change their position. It's almost an estoppel type of analysis. And here, there can be no doubt that their actions caused the village to change. I want to address something counsel said. So counsel, what about their actions caused the village to change? The village was trying to terminate this contract in 2016. And it appears that beginning in August of 2013, they were doing everything they could to thwart the efforts of PML to comply with the terms of the original agreement. You know, they, first of all, they changed where they could put the dirt in phase one. So now, you know, PML has to move this twice. Again, lowering the amount that they could anticipate to make from the project, not even breaking even, but starting to lose money. And then in September, it was the first time of 2013 that the village was working on a concept plan, something they didn't have originally, which then they say is why they had to change things. And that part of the agreement, they reduced the amount of cubic yards of clean fill they can accept by more, well, at least half. And every step of the way, including a stop work order in 2014, and telling them they can't sell clay, and six weeks after they rescind the 2014 stop work order, all of these things appear as if they were trying to get a breach from the very start, that they were doing everything they could to undermine the agreement that they had made with PML. And yet, after the trial, or during the course of the trial, the village maintained that, you know, both sides had breached and they were continuing their performance. Because that was one of the post-trial motions filed by the village that, you know, yes, we acknowledge that they breached, but we continued our performance. So you say, no, we did until 2016 when we wanted out of it. But it appears that for a very long time that you wanted to be done with this agreement, and yet didn't get yourself fully out of it. And so then said, well, we're going to give you a permit to do some grading. We're not going to give you what you really need to break even or to profit, but we're going to give you enough to keep this project somewhat moving. How is that not either, you know, a mutual breach or at least moving forward with this contract and not wanting to get out of it? So I'm happy to respond to that. And I would vigorously dispute the way that you characterize many of those issues. I think from the village's perspective, almost from the get-go, they had someone who was on the site not following the rules. They were getting calls from Lake County. They were getting calls from McHenry County stormwater. So there's two sides to that story, for sure. I do acknowledge, however, that the trial court found three breaches on the part of the village. And I think you articulated those three. But the village didn't have a right to terminate this contract unless and until PML materially breached. And the first material breach by PML occurred in 2016 when they failed to turn over the property. When that happened, the village sought to terminate the contract. Council mentioned the motion we filed to appoint a receiver. Respectfully, I believe he greatly mischaracterized that motion. If you read that motion, which was filed by the village, we said they are in breach, they are in material breach, PML. We want a receiver appointed to wind up their presence on the property. That was the motion. They wanted a receiver appointed to finish up whatever was going on, pay off the taxes, and close it down. So when he says that we want to keep going under the contract, that is grossly misleading. And I would cite you to, I believe it's C-829 to C-1001. I believe those are the motions on that particular issue, and you can read it for yourself. But the reality is, as soon as that first material breach by PML occurred, we were trying to get off this property. Now, by the time trial occurred, by the time trial occurred, the contract had been completely performed. The trial court compelled four years of performance. So by the time trial came, the contract was done. And council indicated, well, at trial, they no longer sought to continue under the contract. Well, they didn't need to do it. They'd gotten everything they wanted under this contract. And so on the election of remedies, I do think we prevail. And I see I'm running very short on time, so I do want to turn to the partial breach doctrine. The partial breach, the concepts of material breach and partial breach are well settled in an Illinois law. Material breach justifies termination of a contract. A partial breach does not. Dustman goes further. It flips the cause and effect. Under Illinois laws that exist now, if there is a partial breach, the non-breaching party must continue performance. Under Dustman, if the non-breaching party continues performance, then the breach must be treated as partial. So what Dustman does is it allows a material breach to be downgraded, essentially, to a partial breach if the other party elects to continue. And in this particular case, the appellate court, as I said, found both parties a material breach, neither could recover. But if one or both parties' material breaches are downgraded to a partial breach, then that party becomes able to recover. That's essentially what they said. That's the argument they're making. That helps us. Why? The village's breaches were all done by the end of 2015. PML filed motion after motion, filed court pleading after court pleading to keep going. They elected to continue. By definition, under the rule that they're asking you to adopt, that means the village's material breaches become partial breaches. And that means the village can recover. By contrast, PML's breaches were material, and they remained material. Their three breaches were failure to turn over the property, which really deprived the village of everything it was supposed to get, failure to pay for Kruger Road. By the way, that obligation didn't arise until after the contract was done in January 2019, and failure to fund a drawdown account. There is no argument, no evidence that the village elected to continue after those breaches. By January 2016, the village was being ordered to continue by the court. And the village couldn't have performed or elected to continue after the last breach, the Kruger Road breach, because that, by definition, didn't occur until after the contract was done. So the village did not elect to continue. Thus, if you apply the partial breach rule, as they ask you to do, PML's breaches remain material. The village's breaches are downgraded to partial breaches. I do want to talk quickly about damages, because I want to respond, if I could, Justice O'Brien, to a question that you asked. Counsel, your time has expired, but I will allow you to respond to the question that was asked. Thank you. Thank you, Chief Justice. You asked what's the appropriate remedy. When this case went up on direct appeal, my client raised a host of damages-related arguments, one of which was all their damages are barred under the new business rule, and the other of which, their damages are mathematically impossible. They had claims for millions of dollars of extra costs, but when you look at their general ledger, those costs aren't on there, and it's mathematically impossible for them to have incurred the costs they claim to have done or for their experts to have followed through the process they did. The appellate court didn't reach those arguments, because they found both parties had breached, nobody gets to recover, no reason to reach those. If you follow the path that counsel outlined for you, that means no one would ever consider those arguments, because he doesn't want a remand to the appellate court to consider the arguments that we raised that weren't considered. He wants to go straight back to the trial court, but only for the limited purpose of allowing one party, PML, to establish more damages. In short, that means the arguments that we raised on direct appeal would never get decided by anyone. That cannot possibly be the equitable result, and we would ask you, if you do find that there's a right to damages, to remand to the appellate court to take up consideration of the issues that we had raised, but they did not reach below. Thank you, Your Honors. Thank you very much, counsel. Judge Sanford, you may begin rebuttal. Thank you, Your Honors. I'll be very brief. We've never asked that the case be remanded to the trial court. In response to questions from the court, I said it should be remanded to the appellate court to address arguments that weren't addressed by the appellate court. And that's the position we stand on, including damages and fees by the appellate court. The election of remedies doctrine should be applicable here. The village argues in its brief that the election of remedies doctrine is a doctrine of general applicability with respect to contracts, and indeed it is. And for purposes of the election of remedies, you don't look at the complaint to determine whether an election has been made. As the case law indicates, the election is to be made at the close of the trial. And at that point, we did not elect to continue the contract. With respect to the village's argument that it sought out of the contract, what it's relied upon in its briefing is this receivership motion. And the receivership motion cannot be taken seriously. Why didn't they take an immediate appeal from the receivership motion? Why didn't they argue error with respect to the receivership motion? It just wasn't pursued. It was denied because it was meritless in the first place. And it was not a bona fide, cannot be construed as a bona fide attempt to close down the contract, to close out performance by PML.  Thank you.